**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| TUWANNA L. PLANT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:13-CV-489-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tuwanna L. Plant on December 27, 2013, and an Opening Brief [DE 27], filed on November 17, 2014. Plaintiff requests that the May 24, 2012 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 23, 2015, the Commissioner filed a response, and Plaintiff filed a reply on March 13, 2015. For the following reasons, the Court denies Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 3, 2010, and her amended alleged onset date is January 1, 2011. Her claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on May 15, 2012. In attendance were Plaintiff, her attorney, medical expert Walter J. Miller, M.D. (by telephone), and an impartial vocational expert. On May 24, 2012, Administrative Law Judge ("ALJ") Dennis Kramer, issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the amended alleged onset date.

3. The claimant has the following severe impairments: sarcoidosis, chronic obstructive pulmonary disease (COPD), degenerative disc disease of the lumbar spine, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry, and push and/or pull 20 pounds occasionally, and 10 pounds frequently; stand and/or walk at least 2 hours in an 8 hour work day; and sit about 6 hours in an 8 hour workday. A hand held assistive device is required for ambulation. The claimant can walk at all times, but not stand; and can lift and carry with the non-cane bearing arm. The claimant can never climb ladders, ropes or scaffolds; but can occasionally climb ramps or stairs, balance, kneel, stoop, crouch or crawl. The claimant must avoid slippery, uneven or moving surfaces; concentrated exposure to hazardous machinery and heights; and concentrated exposure to fumes, dusts, and gases.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1975] and was 34 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2010, through the date of this decision.

(AR 29-37).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*,

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

4

1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, arguing that (1) the ALJ's credibility determination is not supported by "substantive evidence" and (2) the objective evidence suggests greater limitations warranting remand. The Court considers each argument in turn.

### A. Credibility Determination

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367 (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996

6

WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Although Plaintiff criticizes several aspects of the ALJ's decision, the Court finds that the ALJ properly supported his determination of Plaintiff's credibility as to her subjective complaints and that the decision is not patently wrong. First, Plaintiff cites the opening sentence of the ALJ's credibility determination: "The undersigned finds the objective medical[1] evidence, treatment recommendations, and a lack of follow through with prescribed treatment, persuasive in determining that the allegations are not as severe as alleged." (AR 31). Plaintiff contends that the ALJ's reference to a "lack of follow through with prescribed treatment" must mean either quitting smoking or losing weight. (Pl. Br. 9). However, the ALJ does not discredit Plaintiff on either of these bases.[2] Rather, the ALJ specifically references Plaintiff's failure to follow through with physical therapy and her discharge for nonappearance: "Still, after only 5 treatment sessions, and 4 cancellations or 'no shows,' the claimant was discharged from therapy." (AR 33 (citing (AR 417))). The Outpatient Physical Therapy Discharge Summary provides that Plaintiff was seen five times in Outpatient Physical Therapy from February 2, 2010, through February 19, 2010 for lumbosacral dysfunction and that she was "no show/cancellation" for four treatment sessions. (AR 417). The record then explains: "Patient was unable to complete her therapy appointments. No re-assessment was done." *Id*. The recommendation was "Discharge patient from Physical Therapy." *Id*. The ALJ did not

---

[1] The Plaintiff omitted the word "medical" in the quotation. *See* (Pl. Br. 9).

[2] In fact, the ALJ noted that Plaintiff followed her doctor's instruction to quit smoking. *See* (AR 32) ("Her doctor said, 'you need to quit smoking." Subsequently, the claimant did quit. At a follow up examination in April 2012, the claimant reported shortness of breath, but no longer had a cough or dyspnea.")(citations omitted)).

7

mischaracterize the record in finding that Plaintiff did not complete the recommended course of physical therapy.

Next, Plaintiff faults the ALJ for discussing Plaintiff's medical records from the time period prior to her amended onset date of January 2011. However, Plaintiff's medical history leading up to her alleged onset date is relevant in understanding the longitudinal history of her impairments and their affect on her. *See Smith v. Astrue*, No. 11 C 3113, 2012 WL 1866378, at *8 (N.D. Ill. May 22, 2012) ("[E]vidence of a claimant's medical history is likely highly relevant."). In fact, the regulations require the development of a complete medical history for at least twelve months preceding the month in which the application is filed. 20 C.F.R. §§ 404.1512(d), (d)(2), 416.912(d), (d)(2). Plaintiff filed her application in September 2010; thus, medical records dating back to at least September 2009 were sought. This is the period discussed by the ALJ.

In support of this argument, Plaintiff cites only page 9 of the ALJ's decision (AR 34). On that page, the ALJ noted that, in November 2010 and again in August 2011, Plaintiff reported that her shortness of breath was well controlled and that, on these occasions, Plaintiff reported to her treating pulmonologist, Dr. Stoker, that in the previous four weeks, "she had only experienced shortness of breath once or twice a week; shortness of breath was keeping her from getting as much done at work, school or home a 'little of the time'; and she said she only used her nebulizer medication or rescue inhaler 2 to 3 times per week." (AR 34 (citing Ex. C3F, C9F, C17F)). Plaintiff contends that no record from August 2011 indicates that Plaintiff's shortness of breath was well controlled. (Pl Br. 10). However, the ALJ's summary of Plaintiff's report is taken directly from the August 29, 2011 treatment notes. (AR 662). In addition, the treatment report from August 23, 2011 shows that, on examination, Plaintiff had shortness of breath but no cough, no orthopnea, no wheezing, no shortness of breath during exertion, and no PND. (AR 642). On pulmonary exam, her

8

respiratory effort and auscultation of lungs was normal. (AR 643). The review of the chest x-ray showed no evidence of acute cardiopulmonary disease. *Id*. This evidence is from the relevant time period and supports both the ALJ's credibility determination as well as the RFC determination. The ALJ did not err by noting that Plaintiff's allegations of severe pulmonary issues that limit her functional ability were inconsistent with her statements in August 2011 regarding the extent to which she was actually limited by her pulmonary impairment.

In addition to the page cited by Plaintiff, the Court notes that, earlier in the decision, the ALJ summarized Plaintiff's longitudinal medical history, including the diagnosis of sarcoidosis in 2002 and the diagnoses of pulmonary impairments going back to 2008. *See* (AR 32). The ALJ noted the history of generally unremarkable objective testing, including unremarkable chest x-rays in August 2009, December 2010, April 2011, January 2012, and March 2012; no evidence of abnormalities of the hips or knees in September 2008; and a "mild degree" of restrictive abnormality from a pulmonary function test in August 2011. Plaintiff does not dispute these findings or explain how they are not relevant to her medical condition beginning on the alleged onset date.

Nor does the subsequent evidence Plaintiff cites in her brief change the impact of the medical history discussed by the ALJ. First, Plaintiff notes, without further analysis of the medical records that, in March 2011 she was treated for shortness of breath, chest pain, cough, sarcoidosis, headache, and osteoporosis; in July 2011, she was treated for shortness of breath, chest pain, and wheezing; in November 2011, she was treated for restrictive lung disease; and in January and March 2012, she was treated for acute bronchitis. (Pl. Br. 10 (citing (AR 635-71))). The ALJ noted that throughout this time period, the chest x-rays were normal. And, the ALJ recognized that Plaintiff suffers from chronic obstructive pulmonary disease; however, the ALJ found that the disease does not preclude Plaintiff from all work. The list of complaints for which she was treated on each of these occasions

9

does not indicate that Plaintiff is unable to do the restricted range of sedentary work identified by the ALJ in the RFC.

Third, and finally, Plaintiff argues that, in addressing the factors listed in 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929, the ALJ noted evidence that validates Plaintiff's claim of disability, including breathing difficulty, back and hip pain, breathing difficulty with dust, dirt, and perfumes aggravating her symptoms, side effects from medications, using a cane all the time, lying down or sitting in a chair much of the day, and the inability to kneel, squat, bend or touch toes. (Pl. Br. 10-11). Many of these factors were taken directly from Plaintiff's own testimony. The only factor that Plaintiff specifically contests is daily activities. Plaintiff notes that first, the ALJ recognized Plaintiff's testimony that she had difficulty getting in and out of the bath tub and going down the stairs, that her children live with her and help her, and that she was unable to use public transportation. But, Plaintiff notes that the ALJ then commented that there was no evidence of personal hygiene neglect at the consultative examination in October 2010. (AR 34). The Court agrees that this rationale is puzzling and does not see the connection between proper hygiene at the consultative examination and difficulties performing daily activities. However, this incongruity does not render the entire credibility determination patently wrong, nor does it cast any significant doubt on the remainder of the determination, which is supported by substantial evidence.

None of Plaintiff's arguments change the fact that the ALJ considered Plaintiff's weight; her failure to follow through with physical therapy; her occasional complaints of shortness of breath, the normal pulmonary function studies and chest x-rays; the fact that Plaintiff's symptoms improved with medication and when she stopped smoking; the fact that Plaintiff had not gone to the hospital for pulmonary complications since 2010, which was before her alleged January 2011 disability onset date; the normal to mild clinical examination findings; evidence that Plaintiff was found on some

occasions to have a normal gate; other factors that exacerbated Plaintiff's symptoms; and the absence of a treating physician opinion that Plaintiff was more limited than the ALJ found her to be.

As a final matter, the use of the oft-discussed boilerplate language, by itself, does not require remand in this case. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). An ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper*, 712 F.3d at 367-68; *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Recently, the Seventh Circuit Court of Appeals rekindled its criticism that the boilerplate language's "implication . . . is that residual functional capacity (ability to engage in gainful employment) is determined before all the evidence relating to the claimed disability is assessed, whereas in truth all that evidence is material to determining the claimant's residual functional capacity." *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014). In this case, the ALJ thoroughly analyzed Plaintiff's statements and the evidence in weighing Plaintiff's credibility.

Remand on this ground is not required.

### B. Objective Evidence

Plaintiff also argues for remand on the basis that objective evidence suggests greater limitations than imposed by the ALJ. In support, Plaintiff objects to the weight the ALJ gave to the consultative examiner in contrast with the medical expert, the analysis of her need for a cane, the lack of discussion of upper extremity issues, and the analysis of her ability to kneel, squat, or bend.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1545(e)(2), 416.945(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's

11

RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

First, Plaintiff has not shown error in the ALJ giving "some weight" to the opinion of consultative examiner Geoffrey Onyeukwu, M.D. while giving "more weight" to the opinion of medical expert Walter J. Miller, M.D. An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.* §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).[3]

In his decision, the ALJ first recited consultative examiner Dr. Onyeukwu's examination findings, noting that Dr. Onyeukwu found that Plaintiff was in no acute or painful respiratory

---

[3] Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). There is no opinion from a treating physician in this case.

distress, her lungs were within normal limits, there were vascular breath sounds with wheezing but good aeration in the rhonci and no accessory muscle use was noted; Plaintiff's musculoskeletal system was within normal limits, the lumbar spine showed a decrease in the range of motion but that there was full range of motion in the cervical and thoracic spine, no anatomical deformities were noted, and no tenderness was reported; Plaintiff's upper extremities showed no swelling, stiffness, or effusion, she had full range of motion in each joint with muscle strength of 5/5, grip strength of 5/5, and normal fine finger manipulative ability; Plaintiff had no signs of deformities in the lower extremities and no edema, atrophy, or effusion; Plaintiff demonstrated stiffness in the left knee and a limited range of motion in each joint but muscle strength was 4/5 in all major muscle groups; Plaintiff walked with an antalgic gait without the use of an assistive device, was unable to stand from a sitting position without difficulty, and was limited in her ability to stoop, squat, and walk heel to toe; Plaintiff had difficulty getting on and off the examination table, and Plaintiff used a cane to ambulate. (AR 33).

After summarizing Dr. Onyeukwu's examination findings, the ALJ noted Dr. Onyeukwu's conclusion and that Plaintiff "was severely impaired due to multiple medical problems." (AR 34 (citing (AR 566))). But, Dr. Onyeukwu did not identify Plaintiff's limitations in her ability to perform work-related activities. The ALJ explained that he gave more weight to Dr. Miller's assessment because he evaluated Plaintiff based on a review of the entire record, including Plaintiff's significant weight loss and her testimony. The ALJ previously spent two pages discussing Dr. Miller's careful analysis of the medical evidence; Plaintiff does not dispute either Dr. Miller's analysis or the ALJ's discussion of it. Although Plaintiff is correct that Dr. Onyeukwu examined her whereas Dr. Miller did not, the ALJ thoroughly discussed both of their opinions and gave a reasoned explanation for the weight given. The ALJ did not err in weighing the opinions.

13

Plaintiff also criticizes the ALJ for finding that Plaintiff needs to use a cane to ambulate but not to stand. However, the RFC finds that Plaintiff cannot stand. And, the vocational expert identified a significant number of jobs in the economy for a hypothetical person with Plaintiff's RFC with a cane.

Next, Plaintiff criticizes the ALJ for not addressing objective and subjective evidence of bilateral arm/shoulder issues. Plaintiff is correct that Dr. Miller testified that a bone scan showed some abnormality in her shoulders, that Dr. Miller noted that Plaintiff did not testify about her shoulders at the hearing, and that Dr. Miller assumed that Plaintiff's shoulders bothered her and that she did not have a chance to mention it at the hearing. Plaintiff also notes one instance in the medical record, on January 6, 2012, in which she reported a cramping sensation in her legs and upper arms. However, Plaintiff, who was represented by counsel at the hearing (contrary to the assertion in her opening brief to this Court), did not assert limitations caused by a shoulder/upper extremity impairment despite the opportunity to do so. Her attorney could have elicited testimony regarding her shoulders and/or upper extremities if they in fact cause functional limitations. Plaintiff bears the burden of proving disability, and Plaintiff did not offer testimony or evidence of upper extremity limitations.

Finally, Plaintiff argues that her testimony that she could not kneel, squat, or bend is consistent with Dr. Onyeukwu's consultative examination findings. Dr. Onyeukwu noted full range of motion in the thoracic and cervical spine but decreased range of motion in the lumbar spine. For stooping and squatting, Dr. Onyeukwu's notation, under the heading "Gait" is unclear: "Patient has [antalgic] gait without assistive device. Patient is unable to stand from a sitting position without difficulty, *stoop and/or squat* and is able to walk heel to toe without staggering. Patient is unable to get on and off the examination table without assistance. Claimant uses a cane to ambulate." (AR

14

566) (emphasis added). Plaintiff notes that the Social Security Rulings recognizes that "[s]ome stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). In the RFC, the ALJ accommodated these limitations with *occasional* balancing, kneeling, stooping, crouching, or crawling. If Dr. Onyeukwu's examination finding is, in fact, that Plaintiff is unable to stoop and/or squat, then the Court would find that the ALJ erred in his consideration of the evidence and the formulation of the RFC.

In some instances, remand is required in order for the ALJ to resolve an inconsistency between the consultative examiner's report and the ALJ's finding of an ability to occasionally stoop. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013); *see also Brown v. Colvin*, No. 2:14-CV-23, 2015 WL 438723, at *4 (N.D. Ind. Feb. 3, 2015). In this case, however, the error is harmless and remand is not required. Hypothetical three posed by the ALJ to the vocational expert was for the use of a cane, with occasionally lifting and carrying a gallon of milk, no frequent lifting, *no climbing ladders*, *no kneeling*, *no squatting*, *no bending to touch toes*, occasionally climbing seven stairs, and occasionally reaching arms overhead. The vocational expert testified that the same three jobs would be available for hypothetical three as for hypothetical one, which allowed for *occasional* balancing, stooping, kneeling, crouching, and crawling. (AR 127-130). These three jobs are the ones the ALJ found that Plaintiff could perform. (AR 37). Because the jobs that the vocational expert identified for someone with Plaintiff's RFC could also be performed by someone who could not kneel, squat, or bend, any error by the ALJ in articulating the RFC in these functional limitations is harmless. The vocational expert's testimony supports a finding that Plaintiff could perform a significant number of jobs in the economy, and the Court is confident that remanding for a modification of the RFC to no kneeling, squatting, or bending would end in the same result.

*McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Remand is not required.

**CONCLUSION**

Based on the foregoing, the Court hereby **DENIES** the relief sought in the Memorandum in Opposition to Secretary's Decision Denying Plaintiff's Claim for Benefits and Request for Remand [DE 15]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant Commissioner of Social Security and against Plaintiff Tuwanna Latrese Plant.

So ORDERED this 28th day of April, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT